IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CHRISTOPHER J. VANDER KLEY,                    Civ. No. 04-6355-AA

          Plaintiff,                           OPINION AND ORDER

     v.

ACSTAR INSURANCE COMPANY,

          Defendant.
_____

John Spencer Stewart
Thomas A. Larkin
Stewart Sokol & Gray, LLC
2300 SW First Avenue, Suite 200
Portland, OR 97201
     Attorneys for plaintiff

Thomas H. Tongue
John H. Chambers
Elizabeth C. Knight
Dunn Carney Allen Higgins & Tongue
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
     Attorneys for defendant

1    - OPINION AND ORDER

AIKEN, Judge:

Plaintiff Christopher Vander Kley (Vander Kley) filed suit against defendant Acstar Insurance Company (Acstar), alleging breach of contract, negligence, breach of fiduciary duty, fraud, and negligent misrepresentation.  Acstar moved for summary judgment on all claims, and on October 23, 2008, the court heard oral argument on Acstar's motion.  The motion is granted.

<u>BACKGROUND</u>

Vander Kley was a contractor doing business in Oregon as Vander Kley & Company.[1]  In late 1999, Vander Kley entered into three Subcontract Agreements with OC America Construction, Inc. (OC America) and agreed to provide labor, materials, and equipment in connection with a school construction project.  To secure Vander Kley's obligations under the Subcontract Agreements, Acstar (as surety) and Vander Kley (as principle) issued three Performance and Payments Bonds to OC America (as obligee).  Vander Kley and Acstar also entered into an indemnity agreement under which Vander Kley agreed to indemnify Acstar against any and all liability, loss, costs, damages, attorney fees, and other expenses Acstar incurred as a consequence of issuing the bonds.

In the spring of 2000, Vander Kley became insolvent and could

---

[1]While this case was pending, Mr. Vander Kley died, and the representative of his estate, Michael P. Vander Kley, was substituted as plaintiff.  However, the complaint was not amended to reflect this change, and I continue to refer to plaintiff as "Vander Kley."

2    - OPINION AND ORDER

not make payroll. OC America terminated the Subcontract
Agreements, engaged third parties to complete Vander Kley's work,
and submitted monetary claims against the bonds. Vander Kley
claimed that OC America understaffed and mismanaged the project,
causing additional and unnecessary costs, and that OC America
prematurely and without justification terminated the Subcontract
Agreements.

Subsequently, Vander Kley filed a Chapter 7 bankruptcy
petition and received a full discharge in the bankruptcy
proceedings. The bankruptcy trustee abandoned Vander Kley's claims
against OC America, leaving Vander Kley free to pursue then.

While Vander Kley's bankruptcy proceeding was pending, Acstar
received permission from the bankruptcy trustee to file suit
against OC America on behalf of itself and Vander Kley, to avoid
potential expiration of the statute of limitations and preserve its
equitable interests in Vander Kley's claims. Acstar filed suit on
April 27, 2001 in Multnomah County Circuit Court. Subsequently, OC
America filed a countersuit against Acstar and Vander Kley, and the
cases were consolidated.

Acstar's counsel, Darien Loiselle from Schwabe, Williamson &
Wyatt, took the lead in the OC America litigation, though Vander
Kley was represented by attorney Rohn Roberts. Loiselle received
permission from Roberts to speak with Vander Kley directly about
the work performed for OC America and the circumstances surrounding

3    - OPINION AND ORDER

the termination of the Subcontractor Agreements.

Subsequently, Acstar and OC America agreed to mediate their claims. When so notified by Loiselle, Roberts stated that Vander Kley was unable to attend the mediation and objected to Acstar's participation in his absence. Acstar nonetheless proceeded with the mediation and settled the dispute with OC America by paying a monetary amount and assigning to OC America its indemnity rights against Vander Kley. However, the settlement agreement did not release or affect Vander Kley's claims against OC America.

Vander Kley filed suit against Acstar, alleging breach of contract and negligence. Vander Kley alleged that Acstar agreed to represent his interests and to pursue claims against OC America on his behalf, and that Acstar breached its agreement by entering into a settlement with OC America that compromised Vander Kley's ability to pursue his claims.

Acstar sought dismissal of Vander Kley's claims, and I granted the motion on grounds that the claims were unripe because Vander Kley had not sought recovery from OC America, and that he failed to state a claim for which relief could be granted. On appeal, the Ninth Circuit found that the claims were facially ripe and reversed the dismissal of Vander Kley's breach of contract claim based on Acstar's alleged agreement to represent Vander Kley's interests in the OC America litigation. The Ninth Circuit affirmed dismissal of Vander Kley's tort claim.

While Vander Kley's appeal in this case was pending, he filed suit against OC America, and the dispute proceeded to arbitration. At the request of OC America, the arbitrator issued a subpoena to Schwabe, Williamson & Wyatt (Schwabe) seeking all documents related to its representation of Acstar and its alleged representation of Vander Kley.  The arbitrator also issued a subpoena to Pinnell Busch, a consulting firm retained by Acstar during the OC America litigation, at the request of plaintiff.

Schwabe and Acstar objected to the subpoenas on the basis of attorney-client privilege and work product.  Ultimately, a Multnomah County Circuit Court judge quashed the subpoenas, finding that Schwabe had not represented Vander Kley, and that the documents sought from Schwabe and Pinnell Busch were protected by attorney-client privilege and work product doctrine.

Shortly thereafter, Acstar learned that Vander Kley had retained Ralph Hochendoner as an expert and intended to call him as an expert and fact witness during the arbitration hearing. Hochendoner had been a subconsultant/independent contractor at Pinnell Busch and was retained by Acstar to investigate OC America's claims against the bonds.  Vander Kley never informed Acstar that Hochendoner had been retained, even though Vander Kley's claims against Acstar remained pending.

Acstar objected to Hochendoner's testimony at the arbitration hearing, believing that Hochendoner's representation of Vander Kley

5    - OPINION AND ORDER

created a conflict of interest, given that Vander Kley's claims against Acstar were related to the investigation Hochendoner had performed for Acstar.    After Hochendoner learned of Acstar's objection, he declined to testify as an expert for Vander Kley in the arbitration proceeding.    The arbitrator agreed to leave open the proceedings to allow Vander Kley to retain another expert, but the next day Vander Kley and OC America agreed to settle the case.

On March 26, 2008, Vander Kley filed a Second Amended Complaint in this action alleging breach of contract and the duty of good faith and fair dealing, breach of fiduciary duty, negligence, fraud, and negligent misrepresentation.

<u>STANDARD</u>

Summary judgment is appropriate "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In reviewing a motion for summary judgment, the court must draw all reasonable inferences supported by the evidence in favor of the non-moving party. <u>Villiarimo v. Aloha Island Air, Inc</u>., 281 F.3d 1054, 1061 (9th Cir. 2002).  The moving party has the burden of establishing the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

If the moving party shows the absence of a genuine issue of

material fact, the nonmoving party must go beyond the pleadings and
identify facts that show a genuine issue for trial. Id. at 324.
The materiality of a fact is determined by the substantive law on
the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors
Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). A fact issue is genuine
"if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986). The Ninth Circuit has refused to find
a genuine issue of fact where the only evidence presented is
"uncorroborated and self-serving" testimony. Kennedy v. Applause,
Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

DISCUSSION

In response to Acstar's motion, Vander Kley concedes that his
claims of negligence and breach of fiduciary duty are not viable.
Therefore, Acstar's motion for summary judgment is granted on
Vander Kley's Second and Third Claims for Relief. Vander Kley also
withdraws his claims based on Acstar's alleged failure to pay
payroll taxes. Remaining are Vander Kley's claims alleging breach
of contract and the duty of good faith and fair dealing, fraud, and
negligent misrepresentation.

A. Contract Claims

1. Breach of Contract

Vander Kley argues that Acstar's surety status, combined with
its alleged agreement to represent Vander Kley's interests in

litigation against OC America, "created" a contract between the parties. Amended Complaint, ¶ 23. Vander Kley argues that Acstar breached this contract when Acstar entered into a settlement with OC America without Vander Kley's approval and assigned its indemnity rights against Vander Kley to OC America. Vander Kley contends that Acstar's actions caused Vander Kley to settle his claims with OC America "for only a fraction of their true worth." Id. ¶ 26.

However, Vander Kley cannot rely on the parties' surety relationship to support a breach of duty other than that established by contract. Thus, to defeat summary judgment on this claim, Vander Kley must produce evidence that Acstar entered into a separate contractual agreement to represent his interests. Vander Kley fails to do so.

Vander Kley identifies no statement by any Acstar representative suggesting that Acstar agreed to represent Vander Kley's interests or that Acstar retained Loiselle and his firm for that purpose. Instead, Vander Kley's claims are premised solely on the fact that Acstar's counsel filed suit against OC America on behalf of Acstar and Vander Kley.

However, it is undisputed that the bankruptcy trustee controlled Vander Kley's claims against OC America at that time, and Acstar sought permission to file suit in order to preserve its own interests in Vander Kley's claims. Affidavit of Robert B.

Coleman (Coleman Aff.), Ex. B, p. 11; Ex. G, pp. 1-2. It is also undisputed that at all times relevant to Vander Kley's claims, he was represented independently by attorney Roberts, and that Acstar paid for such independent representation. Id. Ex. B, p. 11. Once the suit filed by Acstar was consolidated with that brought by OC America, Roberts was Vander Kley's attorney of record and took action on his behalf. Affidavit of Darien S. Loiselle (Loiselle Aff.), Exs. E-J, L-N, P. Thus, I do not find that the complaint Acstar filed on behalf of it and Vander Kley supports an inference of a contractual agreement between the parties.

This finding is bolstered by the actions of the parties before and after litigation with OC America was initiated. For example, in June 2000, Loiselle sought and obtained Roberts's permission to speak directly to Vander Kley, refuting any assertion that Loiselle also represented Vander Kley. Coleman Aff., Ex. D, p. 1; Loiselle Aff., Ex. A, p. 1 (letter from Loiselle to Roberts confirming "that this office has permission to speak directly with Chris Vander Kley regarding details on this claim"). Loiselle also informed Roberts that "[i]f at any point an issue is raised in which Vander Kley and Acstar are adverse, I will be sure that you are immediately contacted before the issue is pursued further." Id.

Further, after becoming concerned that Vander Kley misunderstood the nature of Acstar's interests, Loiselle informed Roberts of his concern and asked Roberts to clarify Acstar's

position:

> Vander Kley seemed quite concerned about the lack of any
> tort claim notice under the Little Miller Act.  I advised
> Mr. Vander Kley that I am not his attorney and that
> Vander Kley's claims are considerably different than the
> surety's claims against OC America's performance and
> payment bonds.  I also advised him that if he intends to
> preserve those claims, he has to work through you, not
> this office.  Of course, this office is willing to
> cooperate with you and Vander Kley in preparing any tort
> claim notice, I just don't want Mr. Vander Kley relying
> upon Acstar to preserve any claims which Vander Kley may
> have in this proceeding.
>
> You may want to confer with Mr. Vander Kley to clarify
> again that while our interests are aligned and this
> office fully intends to cooperate in this matter, this
> office represents Acstar and its interests.  Those
> interests are not always the same as those of Mr. Vander
> Kley and his company.

Loiselle Aff., Ex. B, p. 1.  Without question, Loiselle made clear

to Vander Kley and Roberts that Acstar would not preserve or

protect Vander Kley's claims against OC America and that Loiselle

and his office represented Acstar, not Vander Kley.

When Acstar agreed to mediate with OC America, Loiselle e-

mailed Roberts to inform him of the mediation.  The e-mail stated:

> Rohn, I do not know how big a role you want to play.  I
> anticipate that I will be taking the laboring oar on the
> claims.  You do need to understand that Acstar may
> ultimately decide that it is in its best interest to
> compromise this claim.  If [Vander Kley] wants to pursue
> it, you may at some point need to take that up along.
> Let's discuss this at your convenience.

Coleman Aff., Ex. J.  Subsequently, Loiselle sent a letter to the

mediator explaining that Vander Kley would not be present at the

mediation, and that "Vander Kley and his attorney, Rohn Roberts,

10   - OPINION AND ORDER

oppose this mediation effort . . . ." Coleman Aff., Ex. C., p. 1.

Finally, in state court deposition testimony, Vander Kley testified that Loiselle and his firm represented Acstar and had not represented Vander Kley "at any time in that capacity." Loiselle Aff., Ex. C, p. 6. In sum, no evidence of record creates an inference that Acstar agreed to represent Vander Kley's interests or retained Loiselle and his office for that purpose. Therefore, Vander Kley's breach of contract claim must fail.

## 2.  Breach of the Duty of Good Faith and Fair Dealing

Vander Kley next argues that Acstar breached its duty of good faith and fair dealing under the indemnity agreement when it settled OC America's claims against the bonds by paying OC America, assigning to OC America its indemnity rights, and agreeing not to assist Vander Kley with his claims against OC America. Vander Kley also argues that Acstar breached its duty by objecting to Hochendoner's testimony at the arbitration hearing.

"All contracts include an implied covenant of good faith and fair dealing." Morrow v. Red Shield Ins. Co., 212 Or. App. 653, 661, 159 P.3d 384 (2007). More specifically,

> [t]he law imposes a duty of good faith and fair dealing
> to facilitate performance and enforcement of the contract
> when it is consistent with and in furtherance of the
> agreed-upon terms of the contract, or where it
> effectuates the parties' objectively reasonable
> expectations under the contract; however, the implied
> covenant of good faith and fair dealing does not vary the
> substantive terms of the contract or impose obligations
> inconsistent with the terms of the contract.

11  - OPINION AND ORDER

<u>Id.</u> at 661-62, 159 P.3d 384.  Thus, Vander Kley must show that Acstar's actions failed to further or effectuate the parties' reasonable expectations under the indemnity agreement.

Notably, the indemnity agreement does not obligate Acstar to represent or pursue Vander Kley's interests in any way.  To the contrary, the indemnity agreement obligates Vander Kley to Acstar. For example, the indemnity agreement requires Vander Kley to transfer a security interest in all equipment, tools, and sums due under the subcontractor agreements and to indemnify and hold Acstar harmless against all liability, loss, costs, damages, attorney fees, and other expenses incurred from issuing the bonds.  The agreement also requires Vander Kley to provide access to his "books, records, and accounts" and grants Acstar "the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Surety or the principal upon any such bond shall be settled or defended and the Surety's decision shall be final and binding upon the Indemnitors." Affidavit of Robert H. Frazer (Frazer Aff.), Ex. A., pp. 1-2.

Vander Kley identifies no provision of the indemnity agreement that supports a reasonable expectation that Acstar would pursue Vander Kley's interests in litigation with OC America or assist Vander Kley in pursuing claims against OC America.  Instead, Vander Kley argues that Acstar breached its duty of good faith inherent in the indemnity agreement by failing to investigate fully OC

America's claims against Vander Kley and the bonds.  See City of Portland v. George D. Ward & Assoc., Inc., 89 Or. App. 452, 457-58 750 P.2d 171 (1988) (an indemnity agreement "which subjects the right to compromise a claim against the principal to the sole discretion of the surety" creates a reasonable expectation that "compromise and payment will be made only after reasonable investigation of the claims, counterclaims and defenses asserted in the underlying action").

It is undisputed however, that Acstar retained consultants Pinnell Busch and Hochendoner to investigate OC America's claims against the bond.  In fact, Vander Kley intended to rely on the same expert, Hochendoner, in the arbitration with OC America. Further, Acstar investigated Vander Kley's counterclaims and defenses against OC America and presented those claims and defenses in the complaint filed against OC America and in Acstar's mediation statement.  Coleman Aff., Ex. C, pp. 1-5; Ex. F, pp. 1-5.  Based on these undisputed facts, Vander Kley cannot now argue that Acstar did not reasonably investigate the claims against the bonds.

Rather, Vander Kley's consternation rests on Acstar's ultimate decision to settle with OC America, even though it purportedly believed that Vander Kley had a "strong affirmative claim" against OC America.  Plaintiff's Memorandum in Opposition, p. 24.  However, once Acstar reasonably investigated the claim against the bonds, it had the discretion to settle with OC America, as set forth

13    - OPINION AND ORDER

explicitly in the indemnity agreement.  See also Coleman Aff., Ex. J, p. 1 (e-mail from Loiselle to Roberts stating, "You do need to understand that Acstar may ultimately decide that it is in its best interests to compromise this claim.  If [Vander Kley] wants to pursue it, *you may at some point need to take that up alone*.") (emphasis added).  Therefore, I do not find that Acstar breached its duty of good faith and fair dealing by settling OC America's claim against the bonds.[2]

Vander Kley also argues that Acstar breached the duty of good faith by assigning its indemnity rights to OC America and agreeing not to assist Vander Kley in pursuing claims against OC America. Vander Kley maintains that these actions were not provided for under the indemnity agreement and severely hindered his ability to pursue claims against OC America.  However, as explained above, Acstar did not agree to represent or pursue Vander Kley's interests in dealing with OC America - its only interest was to protect the bonds.  Further, Vander Kley identifies no provision in the

---

[2]Alternatively, plaintiff moves for a Rule 56(f) continuance to allow it to obtain documents from Acstar regarding its investigation of OC America's claims and its decision to enter into a settlement agreement with OC America.  However, under the indemnity agreement, Acstar possessed the sole discretion to compromise claims brought against Vander Kley and the bonds, provided it performed a reasonable investigation of the claims. It is undisputed that Acstar hired consultants to investigate OC America's claims and asserted counterclaims and defenses during the OC America litigation and mediation.  Thus, under the terms of the indemnity agreement, Vander Kley cannot challenge Acstar's decision to settle with OC America, and I deny the motion for Rule 56(f) continuance.

14   - OPINION AND ORDER

indemnity agreement that creates an obligation to Vander Kley on the part of Acstar. While the duty of good faith and fair dealing is intended to further the parties' reasonable expectations, it cannot create new obligations or vary the terms of a contract, particularly when such obligations are inconsistent with the underlying terms and purpose of the indemnity agreement.

Moreover, Acstar's assignment of its indemnity rights had no practical effect on Vander Kley's recovery. Even if Acstar had not assigned its rights and Vander Kley had prevailed against OC America, Acstar could have attached the proceeds of the arbitration under the doctrine of equitable subrogation, given Vander Kley's contractual obligation to indemnify Acstar. At it was, Vander Kley settled his claims with OC America.

Finally, Vander Kley argues that Acstar breached its duty of good faith by objecting to the subpoenas issued during the arbitration with OC America and preventing Hochendoner's testimony. However, Vander Kley overlooks the fact that he had filed sued against Acstar by that time, the parties were adversaries, and Acstar was well within its rights to protect its work product and attorney-client communications. Regardless, the indemnity agreement did not create a reasonable expectation on the part of Vander Kley that Acstar would assist him in pursuing claims against OC America. Accordingly, Vander Kley cannot prevail on his claim for breach of the duty of good faith and fair dealing.

15   - OPINION AND ORDER

B.  Fraud and Negligent Misrepresentation

Vander Kley alleges claims for fraud and negligent misrepresentation against Acstar, based on Acstar's alleged representation that it would pursue Vander Kley's interests in the OC America litigation.

> The elements of a fraud claim are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury."

Westerberg v. Mader, 182 Or. App. 150, 155, 48 P.3d 192 (2002) (quoting Conzelmann v. N.W.P. & D. Prod. Co., 190 Or. 332, 350, 225 P.2d 757 (1950)).  However, as explained above, Vander Kley fails to present evidence that Acstar falsely represented that it would represent Vander Kley's interests in litigation with OC America.

Likewise, Vander Kley presents no evidence of a "special relationship" between Acstar and Vander Kley, outside of their surety relationship, to support the tort of negligent misrepresentation.  Conway v. Pac. Univ., 324 Or. 231, 237, 924 P.2d 818 (1996) ("[F]or the duty to avoid making negligent misrepresentations to arise, the parties must be in a 'special relationship', in which the party sought to be held liable had some obligation to pursue the interests of the other party.").  Therefore, summary judgment is appropriate.

///

<u>CONCLUSION</u>

Defendant's Motion for Summary Judgment (doc. 73) is GRANTED.

IT IS SO ORDERED.

DATED this <u>14</u> day of January, 2009.


_ ____   __ _____<u>/s/ Ann Aiken</u>_____
                              Ann Aiken
                 United States District Judge

17   - OPINION AND ORDER